EDWARDS and others v. THE ST. LOUIS PERPETUAL INSURANCE COMPANY.

Action of assumpsit on a policy of insurance stipulating that "*endorsements on this policy to be the evidence of property, at the risk of the company under the same.*" Held: That the insured could only recover where the endorsement on the policy was made previous to the loss.

Error to St. Louis Circuit Court.

GEYER & SKINKERS for Plaintiffs.

GAMBLE for Defendant.

MAY TERM.
1842.

*Opinion of the Court, delivered by Napton, Judge.*

Edwards and
others
v.
St. Louis Per.
Insurance Co.

This was an action of assumpsit, on a policy of insurance. The defendant demurred to the declaration, and had judg-ment on that demurrer.

. The policy declared on, was on "Shipments by good vessels and steamboats, for the period of six months from date, to wit : From St. Louis to port or ports on the western waters, and from the same to St. Louis, or from Atlantic ports, via New Orleans, to St. Louis. *Endorsements on this policy to be the evidence of property, at the risk of the company under the same."*

The declaration averred a shipment within the time insured against, and a loss; and further averred, that they had received no invoice or bill of lading, and that they were not otherwise informed of the number, description, and value of the goods shipped and lost, before intelligence of the loss was communicated to them, and that they did not make endorsements on said policy of said goods, or the value thereof, before intelligence of the loss; but as soon thereafter as the plaintiffs could and did ascertain the description, &c., they offered to make the endorsements; which the defendants refused : of all which they had notice.

The only question is, whether the plaintiffs can recover for goods which were not endorsed on the policy : Whether the endorsement on the policy be a condition precedent to the plaintiffs' right to recover.

Policies of insurance are to be construed, like any other instrument, according to their sense and meaning, as collected from the terms of the contract. Robertson v. French, 4 East, 130. "The only difference," said Lord Ellenborough, in the case just cited, "between policies of insurance and other instruments, in this respect, is, that the greater part of the printed language of them being invariable and uniform, has acquired from use and practice a known and definite meaning, and that the words superadded in writing are entitled, *if there should be any reasonable doubt upon the sense and meaning of the whole,* to have a greater effect attributed

MAY TERM. 1842.

Edwards and others
v.
St. Louis Per. Insurance Co.

to them than to the printed words, inasmuch as the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning, and the printed words are a general formula, adapted equally to their case and that of all other contracting parties, upon similar occasions and subjects."

In the case of Hannon and others v. Kingston, (3 Camp. N. P. R. 151,) where the assurance was on goods, "*as might be thereafter declared and valued*," it was held by Lord Ellenborough, that the declaration of interest was not a condition precedent, but that if no declaration was made and communicated to the underwriters before the loss, the policy was then open, and the insured was allowed to prove his interest on the trial.

The words "*thereafter to be declared and valued*," may be regarded, then, to have acquired from this and other cases, a fixed judicial interpretation; and if the words used in this policy are equivalent expressions, a similar interpretation would be authorised. The language of the policy now before the court is, "Endorsements on the policy to be the evidence of property, at the risk of the company." Can this language by fair construction, mean that the property and value may be declared after the loss, in any mode agreeable to the insured, and that the want of such declaration before loss, only converts the policy from a valued, into an open policy? The plain meaning of the stipulation is, that the declaration of *property* and of value must be made in a specific mode, to wit: by endorsements on the instrument containing the terms of the contract, and *in that way only.* Could that endorsement be made after the loss had happened? Of course not: the risk would be determined. The whole object of the endorsement would be defeated by such a construction.

The insertion of these *written terms* in the printed formulas of the insurance company, it is rational to suppose, was made by design, and to effect certain purposes, and cannot be supposed to have been a mere repetition of phrases substantially to be found in all open policies. No doubt, the great inconvenience attending open policies, both to the in-

surers and insured, the liabilities to fraud on both sides, in-
duced the insertion of this clause, for the mutual benefit of
both parties. It was, in effect, making the policy a valued
policy, to the amount endorsed.

The case of Warseley v. Wood and others, (6 Term R.
711,) appears to be more in point. In that case, the printed
proposal referred to by the policy, declared, that the compa-
ny would not be accountable for losses by fire, caused by
civil commotion, &c. And also, that persons sustaining any
loss by fire, "should procure a certificate under the hands of
ministers and church wardens, and of some respectable
householders of the parish, not concerned in the loss, im-
porting that they were acquainted with the character and
circumstances of the person insured, and knew or believed,
that he, by misfortune, and without any kind of fraud or
evil practice, had sustained by such fire the loss and damage
therein mentioned." The declaration stated a loss to the
amount of £700; and that the plaintiff had procured and
delivered to the company a certificate under the hands of
four respectable householders of the parish, and had applied
to the church wardens to sign the certificate, but that they,
without any reasonable or probable cause, wrongfully and
unjustly refused to sign it. The plaintiffs had judgment in
the court of common pleas, (2 Hen. Black. 504,) but this
judgment was reversed by the court of King's Bench, who
unanimously held, that the procuring the certificate of the
church wardens was a condition precedent to the right of
the assured to recover; and that it was immaterial that the
minister wrongfully refused to sign the certificate.

This case, it seems to me, is not distinguishable from the
present. If there was any hardship or inconvenience in
making the endorsements on the policy previous to the loss,
it is the fault of the parties. They had the power to make
their own terms. They have done so in language not easy
to be misunderstood, and courts of law have no power to
relieve the losing party from inconveniences or hardships
attending his own contract.

Judgment affirmed.

Action of as-
sumpsit on a
policy of insu-
rance stipula-
ting that "en-
dorsements on
this policy to
be the eviden-
ces of pro-
perty, at the
risk of the
company un-
der the same."
Held: That
the insured
could only recover where the endorsement on the policy was made previous